OPINION OF THE COURT
John B. Riordan, S.
This is an application to create a device similar to a supplemental needs trust pursuant to section 13.29 of the Mental Hygiene Law. The petitioners, A. William Larson and Barbara Peters, are coguardians of their developmentally disabled son, David. David resides at the Sara Daley State Operated Individualized Residential Alternative which is a residence under the jurisdiction of the New York State Office of Mental Retardation and Developmental Disabilities (OMRDD). He is under the age of 65 and receives both Medicaid and Supplemental Security Income (SSI).
In 1987, David’s grandmother died and left David an inheritance of approximately $25,000. As David’s eligibility for government benefits would have been jeopardized upon the receipt of the inheritance or, in the alternative, the full amount would have to be used to repay Medicaid, an application was made to establish a supplemental needs trust. The application was granted by this court on March 9, 1995. For various reasons, the supplemental needs trust was never established or funded.
The petitioners, joined by James Whitehead — the director of the Hudson Valley Developmental Disabilities Services Office— have asked the court for permission to transfer the inheritance to the state to be deposited into a device similar to a supplemental needs trust pursuant to Mental Hygiene Law § 13.29. Such a device would not jeopardize David’s eligibility for either Medicaid or SSI because it would be a trust[1] as set forth in 42 USC § 1396p (b) (4) (A), Social Services Law § 366 (2) (b) (2) (iv) and 18 NYCRR 360-4.5 (e). The proffered reason behind the establishment of these accounts is to protect the small inheritance of a developmentally disabled or mentally retarded resident in a state facility when the patient has no responsible relative available or willing to administer the inheritance.
*484 Section 13.29 (a) of the Mental Hygiene Law, entitled “Gifts,” provides that the Commissioner “on behalf of the state, and if in the public interest, shall accept, hold in trust, administer, apply, execute, or use gifts, devises, bequests, grants, powers, or trusts of personal or real property made to the state * * * which are to be used or may be used for purposes of the office of mental retardation and developmental disabilities, including, but not limited to, the maintenance, support, or benefit of one or more patients in a facility.” This section of the law, with variations thereof, has been the law of the State of New York for 160 years, having been enacted in 1842 as part of an “act to organize the State Lunatic Asylum, and more effectually to provide for the care, maintenance and recovery of the insane” (L 1842, ch 135).[2] As originally enacted, the law provided that “managers may take and hold, in trust for the state, any grant or devise of land or any donation or bequest of money or other personal property, to be applied to the maintenance of insane persons and the general use of the State Lunatic Asylum” (L 1842, ch 135, § 6).
Although the law has been in effect for 160 years, there have been only two decisions where section 13.29 of the Mental Hygiene Law has been analyzed by the courts.[3] Where the Commissioner of Lunacy tried to exercise a right of election on behalf of one of his patients, the Court held “[i]t is true that this statute vests in the Commission in Lunacy among other general powers the right to hold a devise of bequest to any State hospital in trust for the support of an insane person. But the act does not specifically or by inference authorize any election by the Commission on behalf of a widow in a case of this sort, and in the absence of clear intent the courts should not hold the statute sufficiently broad to allow the Commission to exercise a right which has been given as a personal one to the incompetent” (Camardella v Schwartz, 126 App Div 334, 337).
In Matter of Patrick BB. (284 AD2d 636), Patrick, a developmentally disabled man, inherited approximately $20,000, and an application was made, inter alia, to establish a “13.29” fund *485 with the inheritance. The Court held that the statute “regulates the receipt and management of property in the form of ‘gifts, devises, bequests, grants, powers, or trusts’ of property essentially ‘made to the state’ for the use of petitioner or its facilities. Supreme Court’s order did not ‘gift’ respondent’s inheritance to the State. Clearly, the inheritance remained patient property. Thus, we find Mental Hygiene Law § 13.29 (a) inapplicable in the instant case” (Matter of Patrick BB., supra at 638).
In response to the Appellate Division’s decision in Matter of Patrick BB. (supra), the petitioners have asked the court for permission to conditionally gift the property to the Commissioner of the State of New York to be held in a “13.29” account.[4]
Guardians of developmentally disabled individuals have been allowed to gift property of the ward under the doctrine of substituted judgment (Matter of Daly, 142 Misc 2d 85). The duty of the court is to “inquire as to what a reasonable and prudent person would do in the circumstances” (Daly, supra at 88, citing Matter of Christiansen v Christiansen, 248 Cal App 2d 398, 56 Cal Rptr 505). It is clear that a guardian appointed pursuant to article 17-A of the Surrogate’s Court Procedure Act has the authority, with court permission, to transfer an inheritance to a supplemental needs trust (Matter of Goldblatt, 162 Misc 2d 888). A reasonable and prudent person under the circumstances would elect to give the property to the state to be used for his or her own maintenance, rather than have the property used to pay claims for assistance rendered on his or her behalf.
The analysis, however, does not end here. As court approval is required in establishing the device similar to a supplemental needs trust when a developmentally disabled person’s property is the subject of the proceeding, the court may condition the “exercise of that privilege in such manner as it believes will sufficiently protect the interest of the disabled person” (Matter of Goldblatt, supra at 890; DiGennaro v Community Hosp. of Glen Cove, 204 AD2d 259). Accordingly, the device is approved but must include a provision requiring the Commissioner to *486 file an annual inventory and account with the Surrogate’ Court, Nassau County.

. Trust is defined in 42 USC § 1396p (d) (6) as including “any legal instrument or device that is similar to a trust * *

. The law was amended in 1902 and the original board of managers was replaced by a “Commissioner of Lunacy.” The primary purpose of the revision, and of subsequent revisions, was to correct the “scandals and all the extravagance which have marked the administration * * * .” (1902 Mem filed with Assembly A 438, amdg Insanity Law, at 75.)

. The Attorney General’s office has provided the court with eight additional Supreme Court and Surrogate’s Court orders where approval for the funding of accounts pursuant to section 13.29 of the Mental Hygiene Law was given.

. Pursuant to 42 USC § 1382b (c), where an individual transfers resources for less than fair market value, the individual will be ineligible for SSI for a period of time. The Attorney General has taken the position that the proposed transfer will not affect David’s eligibility for SSI benefits because the transfer is for other valuable consideration pursuant to 42 USC § 1382b (c) (1) (C) (ii) (l) as any possible claim by OMRDD will be waived.